## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cr-00214-TWP-TAB |
| ) | |
| JULIUS JOHNSON, ) | |
| ) | |
| Defendant. ) | |

### ENTRY DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on a Motion to Suppress filed by Defendant Julius Johnson ("Johnson") (Filing No. 82). Johnson is charged by Indictment with Count One: Possession With Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), Count Two: Carrying a Firearm During and in Relation to a Drug trafficking crime, in violation of 18 U.S.C. 924(c)(1), and Count Three: Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Filing No. 8). In his Motion, Johnson contends all evidence recovered following his unlawful and warrantless arrest should be suppressed. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court issues its findings of fact and conclusions of law and **denies** the Motion to Suppress.

### I. FINDINGS OF FACT

As a preliminary matter, the Court determines that a hearing is not necessary. Johnson has requested a hearing (Filing No. 82 at 2), however, he raises no factual disputes and does not challenge the accuracy of the information articulated by law enforcement in the Affidavit in Support of Complaint, 1:19-mj-00612. (*See* Filing No. 2.) Instead, Johnson raises only a purely legal question--whether his consent to search his vehicle was the product of an illegal arrest, and

therefore invalid. ([Filing No. 82 at 1](#).) "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin,* 638 F.3d 562, 564 (7th Cir. 2011). Because there are no material disputes concerning the facts and the Motion raises purely legal questions, no evidentiary hearing is required.

In July 2018, federal task force officers with the Drug Enforcement Agency ("DEA") and Indianapolis Metropolitan Police Department ("IMPD") began an investigation of Johnson's suspected distribution of Fentanyl. ([Filing No. 2 at 4](#).) During their investigation, Johnson allegedly participated in several controlled buys with a cooperating source. *Id*.

On June 7, 2019, DEA Taskforce Officer Clifton S. Jones ("TFO Jones") obtained a federal search warrant for the Brookville Road Self Storage unit #212 located in Indianapolis, Indiana. TFO Jones determined from his investigation that Johnson had obtained storage unit #212. *Id*. Upon arrival at the storage unit facility, officers encountered Johnson exiting the office of the storage facility. *Id*. TFO Jones placed Johnson under arrest for Dealing in a Narcotic (Fentanyl) as a level 4 felony under Indiana Code 35-48-4-1, as he believed state charges were pending based on the controlled buys and other factors. *Id*. at 5. TFO Jones read Johnson his *Miranda* warnings, and Johnson indicated that he understood his rights. *Id*. Incident to his arrest, officers conducted a search of Johnson for officer safety, and removed U.S. currency and two cell phones from his person. *Id*.

Officers began their search of storage unit #212, pursuant to the federal search warrant, and encountered a Buick Wildcat automobile inside with a locked trunk. Johnson was asked if he had the keys to the Buick. He responded that the keys may be inside a reddish Oldsmobile, bearing Indiana license plate BU6732, located in the parking lot. *Id*. TFO Jones requested consent from

Johnson for law enforcement to retrieve the keys from the Oldsmobile, and Johnson gave consent. Upon entering the Oldsmobile, officers observed a firearm. *Id*. at 5-6. A K-9 was on the scene and a sniff of the Oldsmobile was conducted, the result of which was a positive alert for of the presence of controlled substances. *Id*. at 6. Believing they had probable cause to search the Oldsmobile, a search was conducted which resulted in the retrieval of a fully loaded Springfield Armory 9mm handgun. *Id*.

Although Johnson had been searched earlier for officer safety, a subsequent search of his person incident to his arrest revealed a clear plastic baggie containing an off-white, rock-like substance in his underwear. A field test revealed that the substance tested positive for Fentanyl, the initial weight of which was 62.1 grams. *Id*. at 6, 7. Johnson is charged in this case with the intent to distribute the Fentanyl, possession of a firearm in furtherance of drug trafficking, and being a felon in possession of a firearm.

It was not until June 10, 2019, that state court charges of Dealing in a Narcotic Drug (Fentanyl) were filed in the Marion Superior Court in cause 49G20-1906-F3-22976. (Filing No. 79-1.) On that same date, probable cause for Johnson's arrest was found by a judge of the Marion Superior Court. (Filing No. 79-2.) On June 11, 2019, a Complaint was filed in federal court charging Johnson with offenses related to the Fentanyl and firearm that he allegedly possessed on June 7, 2019. (Filing No. 2.) On that same date, the state court charges were dismissed. (Filing No. 79-3.) On June 18, 2019, Johnson was indicted by a federal grand jury. (Filing No. 8.) Johnson filed the instant Motion on September 14, 2020, seeking to suppress of all evidence seized during his arrest. (Filing No. 82.) The Government filed a Response in Opposition on September 28, 2020. (Filing No. 86.) Johnson did not file a reply.

## II. CONCLUSIONS OF LAW AND DISCUSSION

Johnson argues that his consent to search the Oldsmobile "was the product of an illegal arrest and therefore invalid", ([Filing No. 82 at 1](#)), and the search of his person "incident to arrest was invalid, as it was based on evidence seized as the product of unlawfully obtained consent." *Id* at 2. The Government bears the burden of proving by a preponderance of the evidence the admissibility of evidence – in this case that Johnson's Fourth Amendment rights were not violated during the incident in question. *United States v. Matlock,* 415 U.S. 164, 177, 177 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (requiring that the government bear the burden of demonstrating the admissibility of evidence resulting from a warrantless search by a preponderance of the evidence); *see also Lego v. Twomey,* 404 U.S. 477, 488–89, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

The first issue before the Court is whether Johnson's initial arrest was illegal. The Fourth Amendment prohibits unreasonable searches and seizures, but a warrantless arrest does not run afoul of the Fourth Amendment if the arresting officer has probable cause. *Thompson v. Wagner,* 319 F.3d 931, 934 (7th Cir.2003). "Probable cause for an arrest exists if an officer reasonably believes, in light of the facts and circumstances within his knowledge at the time of the arrest, that the suspect has committed, or is committing, an offense." *Id.* An officer is entitled to make reasonable inferences based on his or her experience and training when determining whether the circumstances in any particular case rise to the level of probable cause. *Id.* at 935–35.

The Court must then determine whether Johnson's consent to search the Oldsmobile was voluntary. The burden is on the Government to prove, by a preponderance of the evidence, "that someone who consents to a search does so freely and voluntarily." *United States v. Saadeh,* 61 F.3d 510, 518 (7th Cir.1995) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). "The existence of voluntary consent is a question of fact to be determined

4

based on the totality of the circumstances." *United States v. King,* 627 F.3d 641, 648 (7th Cir.2010) (quoting *United States v. Figueroa–Espana,* 511 F.3d 696, 704 (7th Cir.2007)).  In making this determination, among the relevant factors to consider are:

> (1) the person's age, intelligence, and education, (2) whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was prompted by repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent.

*United States v. Villegas,* 388 F.3d 317, 325 (7th Cir.2004) (quoting *United States v. Raibley,* 243 F.3d 1069, 1075–76 (7th Cir.2001)).

Although in his Affidavit TFO Jones avers that Johnson was placed under arrest for pending state charges based on controlled buys and other factors, (Filing No. 2 at 4-5), Johnson points out that charges were not filed against him in state court until after he was arrested without a warrant.  (Filing No. 82 at 1.)  Thus, Johnson argues the warrantless arrest was illegal.  While detained after his warrantless arrest, Johnson was given *Miranda* warnings.  When asked to give consent to search the Oldsmobile so as to obtain the keys to access the Buick Wildcat in the storage unit, Johnson agreed. Johnson does not dispute that he gave consent, however, he argues that his consent was the product of an illegal arrest and therefore invalid.

In response, the Government first argues that Johnson's Motion to Suppress is untimely. While the Court agrees with the Government's position, which is supported by Seventh Circuit case law, the interest of justice is best served if the Court rules on the Motion.

Responding to the merits of the Motion to Suppress, the Government does not dispute that state court charges were not filed until June 10, 2019, a date after Johnson's July 7, 2019 arrest. The Government explains that although there was not a state court warrant for Johnson's arrest, warrantless arrests are permitted by law as long as probable cause exist.  Thus, they argue as long

5

as Johnson's consent to enter the Oldsmobile was voluntary, it was not the product of an illegal arrest. The Government notes that Johnson does not dispute that after being given his *Miranda* warnings, he consented to officers entering the Oldsmobile to retrieve the keys so that officers could search the vehicle located inside the storage unit – for which officers had a federal search warrant. Without the keys, the Government contends officers would have forced entry into the vehicle. The Government proffers that Johnson likely gave consent to prevent forced entry to his vehicle.

The Government also argues the search of the Oldsmobile was a legal probable cause search. To establish probable cause, there must be circumstances that "indicate a reasonable probability that evidence of a crime will be found in a particular location; neither an absolute certainty nor even a preponderance of the evidence is necessary." *United States v. Lickers*, 928 F.3d 609, 617 (7th Cir. 2019) (citing *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). After retrieving the keys via consent, officers entered the Oldsmobile and observed the presence of a firearm in the vehicle. A K-9 sniff was then conducted around the vehicle, which led to a positive alert for the presence of controlled substances. (Filing No. 2 at 5, 6.) The Government asserts these circumstances coupled together amount to probable cause.

Next, the Government argues the subsequent search incident to arrest was also valid. Upon arrival at the storage unit, IMPD spotted Johnson in the parking lot and conducted a protective search when they placed him under arrest. The Government asserts that IMPD had probable cause to arrest Johnson for prior controlled buys that he had made with a confidential source. A more thorough search of Johnson was then conducted after the discovery of the firearm in the Oldsmobile, as well as the K-9 sniff that resulted in a positive alert for a controlled substance in the vehicle. Both searches that were conducted are permissible where IMPD had probable cause

to arrest Johnson, and it has long been held that the search of a person and place of arrest, as incidental to lawful arrest, is lawful. *Agnello v. United States*, 269 U.S. 20, 30 (1925).

Finally, to bolster its argument, the Government argues that even if Johnson's consent was invalid, the doctrine of inevitable discovery, as well as the good faith doctrine support admission of the evidence. *See United States v. Jones,* 72 F.3d 1324, 1330 (7th Cir. 1995) ( "The inevitable discovery exception to the exclusion of illegally obtained evidence 'permits the introduction of evidence that eventually would have been located had there been no error.'"); *see also Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 2422, 180 L. Ed. 2d 285 (2011) ("[W]hen the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrent value of suppression is diminished, and exclusion cannot 'pay its way.'").

The Court looks at the totality of the circumstances based on the facts and argument provided by both the Government and Johnson[1]. Warrantless arrests are permitted by law. *See United States v. Navarro*, 90 F.3d 1245, 1254 (7th Cir. 1996) ("In order to make an arrest without a warrant, the police must have probable cause, under the totality of the circumstances, to reasonably believe that a particular individual has committed a crime"). In *United States v. Gilbert,* 45 F.3d 1163, 1166 (7th Cir. 1995), the Seventh Circuit instructed that:

> We assess the determination of probable cause for a search or an arrest under the common-sense "totality of the circumstances" *Gates* analysis: "whether, given all of the circumstances set forth ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *see Gilbert,* 45 F.3d at 1166.

---

[1] As argued by the Government in their brief, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived." See *United States v. Berkowitz*, 927 F.2d 955, 956 (7th Cir. 2019). Although Johnson offers no factual argument, case law or legal support for his position in his Motion, the Court has considered relevant factual arguments presented by Johnson in his Motion to Compel. (See Filing No. 75 and Filing No. 83).

The material facts are not disputed. In this case, a documented IMPD cooperating source shared with investigators that he/she could purchase Fentanyl from Johnson. (Filing No. 2 at 4.) DEA and IMPD officers received additional intelligence that Johnson was a supplier for lower level drug distributors in Indianapolis. *Id.* An investigation into Johnson included several controlled buys of Fentanyl from Johnson by the cooperating source. *Id.* DEA agents also confirmed that Johnson had obtained a storage unit at Brookville Road Self Storage, Unit #212. On June 7, 2019, DEA and IMPD officers executed a federal search warrant, that was partially, but not entirely, supported by the controlled buys. (Filing No. 2 at 4-5.) These circumstances are sufficient probable cause for the officer to arrest Johnson (without a warrant) upon his arrival at the storage unit.

A search--pursuant to the federal search warrant--of the storage unit revealed a vehicle with a locked trunk. (Filing No. 2 at 5.) Although Johnson asserts that his consent was unlawfully obtained, he presents no argument or evidence to support his position. Instead, the evidence shows that Johnson voluntarily gave consent for law enforcement to retrieve the keys from an Oldsmobile vehicle in the parking lot. Upon entering the Oldsmobile the officer observed a firearm in plain view. (Filing No. 2 at 6.) A K-9 sniff was then conducted, which resulted in a positive alert for controlled substances. A probable cause search of the Oldsmobile led to the retrieval of a fully loaded Springfield Armory 9mm pistol. *Id.* A subsequent search incident to the arrest of Johnson led to the discovery of 59.2 grams of Fentanyl (Filing No. 79 at 2.)

Based on these circumstances, it was reasonable for officers to believe Johnson was distributing Fentanyl. Thus, the warrantless arrest and search of Johnson did not violate his constitutional rights as it was supported by probable cause. Johnson does not allege that he was forced, threatened or otherwise coerced into giving his consent to search the Oldsmobile.

Regardless, the observation of the firearm, as well as the positive alert of a controlled substance from the K-9 sniff establish probable cause to search the Oldsmobile.

The Court persuaded by the Government's argument that even if the consent was invalid, the doctrine of inevitable discovery would apply. A K-9 was present on the scene, and a K-9 sniff would have been conducted, which would have led to a positive alert for contraband. An inevitable search of the Oldsmobile would have been performed, and IMPD officers would have the discovered the firearm. Additionally, as per IMPD policy, (Filing No. 86-1), upon Johnson's arrest, the Oldsmobile would have been towed because IMPD observed that Johnson was in possession of the Oldsmobile. At that point, an inventory search would have been conducted prior to the towing of the vehicle, which would have revealed the firearm.

Lastly, if the doctrine of inevitable discovery did not apply, the good faith doctrine would have. Absent flagrant police misconduct, IMPD's good faith efforts and lawful conduct in their search would have supported admission of the evidence.

### III. CONCLUSION

The Government has proved by a preponderance of the evidence that Johnson's Fourth Amendment rights were not violated during the warrantless arrests and the consensual search of his Oldsmobile. For the reasons stated above Johnson's Motion to Suppress, (Filing No. 82), is **DENIED**.

**SO ORDERED**.

Date: 12/4/2020

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jane Ruemmele
HAYES RUEMMELE LLC
jane@chjrlaw.com

Pamela S. Domash
UNITED STATES ATTORNEY'S OFFICE
pamela.domash@usdoj.gov